

After Recording Return To:
NATIONSTAR MORTGAGE LLC
350 HIGHLAND DRIVE
LEWISVILLE, TX 75067

This Document Prepared By:
NATIONSTAR MORTGAGE LLC
350 HIGHLAND DRIVE
LEWISVILLE, TX 75067
Tatiana Vakidis

Until a change is requested all tax
statements shall be sent to the
following address.
NATIONSTAR MORTGAGE LLC
350 HIGHLAND DRIVE
LEWISVILLE, TX 75067

True and Actual Consideration is:
$0.00

_____ [Space Above This Line For Recording Data] _____

Original Recording Date: January 03, 2008         Loan No:
Original Loan Amount: $125,000.00        Investor Loan No:
                   MIN Number:

## LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

   This Loan Modification Agreement ("Agreement"), made this 28th day of May, 2014, between KELLY BRANDERHORST ("Borrower") and NATIONSTAR MORTGAGE LLC, whose address is 350 HIGHLAND DRIVE, LEWISVILLE, TX 75067 ("Lender"), and Mortgage Electronic Registration Systems, Inc. ("MERS"), ("Beneficiary"), and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS, ("Beneficiary"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated December 27, 2007 and recorded in Book/Liber N/A, Instrument No: 2008-001370, of the Official Records (Name of Records) of MULTNOMAH County, OR (County and State, or other Jurisdiction) and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property", located at



LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument
8300a 01/14



Form 3179 1/01 (rev. 06/12)
(page 1 of 6)

# Exhibit A

**13823 SE RHINE ST, PORTLAND, OR 97236,**

(Property Address)

the real property described being set forth as follows:

**See Exhibit "A" attached hereto and made a part hereof;**

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1. As of May 1, 2014, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $155,759.94, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.625% from May 1, 2014. Borrower promises to make monthly payments of principal and interest of U.S. $712.80, beginning on the **1st** day of **June, 2014**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.625% will remain in effect until principal and interest are paid in full. If on **May 1, 2054** (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a)  all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement,

Exhibit A

Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

(b)    all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.    Borrower understands and agrees that:

(a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(d)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(e)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(f)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns. **MERS is the Beneficiary, of record under the Security Instrument and this Agreement.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

6.    In the event that I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the loan documents and did not reaffirm the mortgage debt under applicable law, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.





LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument
8300a 01/14

Form 3179 1/01 (rev. 06/12)
(page 3 of 6)

Exhibit A

  
7. By this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

In Witness Whereof, the Lender and I have executed this Agreement.

*Kelly Branderhorst* _____ (Seal)
KELLY BRANDERHORST   -Borrower

_____ [Space Below This Line For Acknowledgments] _____

State of Oregon

County of _Clackamas_

This instrument was acknowledged before me, a Notary Public on

_6 - 6 - 2017_ _____ by

KELLY BRANDERHORST.

_____
(Signature of notarial officer)

_CSM -_
(Title or rank)

My Commission expires : _6 · 16 · 17 -_

OFFICIAL STAMP
JEREMIAH JEFFERY SCHNEPP
NOTARY PUBLIC - OREGON
COMMISSION NO. 479144
MY COMMISSION EXPIRES JUNE 16, 2017

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument
8300a 01/14

Form 3179 1/01 (rev. 06/12)
(page 4 of 6)

Exhibit A

NATIONSTAR MORTGAGE LLC

By: _____  (Seal) - Lender
Name: _____Bianca Hockensmith_____
Title: _____Assistant Secretary_____

_____6/13/14_____
Date of Lender's Signature

[Space Below This Line For Acknowledgments] _____

The State of TX

County of _____Dallas_____

Before me ___Krista Marie Moore___ _Notary Public_ (name/title of officer) on this day personally appeared

_____Bianca Hockensmith_____ , the ___Assistant Secretary___ of
_____Nationstar Mortgage LLC_____

known to me (or proved to me on the oath of _____ or through _____
(description of identity card or other document)) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this ___13___ day of ___June___ A.D. ___2014___

_____
Signature of Officer

___Notary Public___
Title of Officer

My Commission expires : ___71577___

KRISTA MARIE MOORE
Notary Public, State of Texas
My Commission Expires
July 15, 2017

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument
8330a 01/14

Form 3179 1/01 (rev. 06/12)
(page 5 of 6)

Exhibit A

Exhibit A

_Bianca Hockensmith_        5/13/14

Mortgage Electronic Registration Systems, Inc - Nominee for Lender

Title:    **Assistant  Secretary**

_____ [Space Below This Line For Acknowledgments] _____

The State of TX

County of ___Dallas___

Before me ___Krista Marie Moore___ _Notary Public_ (name/title of officer) on this day personally appeared

___Bianca Hockensmith___ , the    **Assistant  Secretary** _____ of

Mortgage Electronic Registration System, Inc.

_____

known to me (or proved to me on the oath of _____ or through _____
(description of identity card or other document)) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this ___13___ day of ___June___ A.D. 20_14_

_____
Signature of Officer

_Notary Public_
Title of Officer

My Commission expires : ___7-15-77___

```
KRISTA MARIE MOORE
Notary Public, State of Texas
My Commission Expires
July 15, 2017
```

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae Uniform Instrument
8300a 01/14

Form 3179 1/01 (rev. 06/12)
(page 6 of 6)

Exhibit A

KRISTA MARIE MOORE
Notary Public, State of Texas
My Commission Expires
July 10, 2017

Exhibit A

Loan No 
Borrower: KELLY BRANDERHORST

## AGREEMENT TO MAINTAIN ESCROW ACCOUNT

WHEREAS, KELLY BRANDERHORST ("Borrower") desires NATIONSTAR MORTGAGE LLC ("Lender") to collect payments from Borrower to be held by Lender for the payment of certain sums due in connection with Borrower's Note and Security Instrument, dated December 27, 2007, (hereinafter referred to as "Note" and "Security Instrument" respectively) currently held by Lender;

NOW THEREFORE, in consideration of the foregoing and the mutual covenants contained in this Agreement ("Agreement"), Borrower agrees to pay Lender, on the day Periodic Payments are due under the Note, until the Note is paid in full, or the Escrow Account is otherwise terminated pursuant to this Agreement or in accordance with applicable law, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Security Instrument; and (d) Mortgage Insurance Premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums. These items are called "Escrow Items." In the event that Borrower receives bills, assessments, invoices, or other requests for payment of Escrow Items, Borrower shall promptly furnish to Lender all such notices.

Borrower shall pay Lender the Funds for Escrow Items unless this Agreement is terminated either by Lender, or pursuant to applicable law. In the event of termination, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. In the event Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may pay such amount in accordance with the terms of the Note and Security Instrument and Borrower shall then be obligated to repay Lender any such amount. Additionally, if Borrower is obligated to pay Escrow Items directly, and Borrower fails to pay the amount due for an Escrow Item, Lender may, in accordance with applicable law, require Borrower to maintain an Escrow Account.

Borrower agrees to make an initial payment of Funds to establish the escrow account, which amount shall be based on an estimate of the amount and date of expenditures for future Escrow Items, or otherwise in accordance with the Real Estate Settlement Procedures Act ("RESPA"). The estimate of expenditures of future Escrow Items shall be made based on current data available to Lender. Borrower acknowledges that the actual payments of Escrow Items may vary from the estimated amounts.

Lender will collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time period specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless agreed to in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to




AGREEMENT TO ESTABLISH ESCROW ACCOUNT 11/12 (Page Exhibit A

Loan No.: 
Borrower: LY BRANDERHORST

Lender the amount necessary to make up the shortage in accordance with RESPA. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument or termination of this Agreement, Lender shall promptly refund to Borrower any Funds held by Lender.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Agreement to Maintain Escrow Account.

*Kelly Branderhorst*
_____
Borrower - KELLY BRANDERHORST

10/6/14
_____
Date

_____
Borrower -

_____
Date

_____
Borrower -

_____
Date

_____
Borrower -

_____
Date



AGREEMENT TO ESTABLISH ESCROW ACCOUNT 11/12

Exhibit A

Loan No.: ▮▮▮▮▮▮▮▮
Borrower: KELLY BRANDERHORST

## COMPLIANCE AGREEMENT

In consideration of Nationstar Mortgage LLC ("Lender") extending funds (the "Loan"), in connection with the closing of the property located at 13823 SE RHINE ST, PORTLAND, OR 97236 (the "Closing"), the undersigned ("Borrower") agrees, upon request of Lender, its successors or assigns ("Note Holder"), or upon request of any person acting on behalf of Note Holder, to fully cooperate with Note Holder or such person to correct any inaccurate term or provision of, mistake in, or omission from any document associated with the Closing. Borrower further agrees to execute such documents or take such action as Note Holder or such person acting on behalf of Note Holder reasonably may deem necessary (including without limitation the correction of any such inaccuracy, mistake, or omission) as will enable Note Holder to sell, convey, seek guaranty of, or market the Loan to any entity, including without limitation an investor, the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Department of Housing and Urban Development, the Department of Veterans Affairs, or any bonding authority.

Borrower further agrees to comply with any such request within a reasonable period of time as specified by Note Holder or by such person acting on behalf of Note Holder. Failure to comply shall constitute default under the Note and Security Instrument that evidence the Loan, and Note Holder may pursue its available remedies.

BY SIGNING BELOW BORROWER ACKNOWLEDGES THAT BORROWER FULLY UNDERSTANDS THIS COMPLIANCE AGREEMENT OR OTHERWISE HAS SOUGHT THE ADVISE OF COUNSEL.

_Kelly Branderhorst_             6/6/14
Borrower - KELLY BRANDERHORST         Date

_____         _____
Borrower -                            Date


COMPLIANCE AGREEMENT 11/12


Exhibit A

## Exhibit "A"

Loan Number: █████████

Property Address: **13823 SE RHINE ST, PORTLAND, OR 97236**

Legal Description:

THE FOLLOWING DESCRIBED PROPERTY LOCATED IN MULTNOMAH COUNTY, STATE OF OREGON: THE WEST ONE-HALF OF LOT 8, OCONNOR PARK, EXCEPT THE SOUTH 78.23 FEET OF THE EAST 59.29 FEET THEREOF IN THE NORTHEAST ONE-QUARTER OF SECTION 11, TOWNSHIP 1 SOUTH, RANGE 2 EAST, OF THE WILLAMETTE MERIDIAN, IN THE CITY OF PORTLAND, COUNTY OF MULTNOMAH AND STATE OF OREGON.



Exhibit A Legal Description Attachment 11/12



Page 1 of 1

Exhibit A